UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JESSICA A. GIBSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-01212-JPH-TAB |
| | ) | |
| INDIANA STATE PERSONNEL | ) | |
| DEPARTMENT, | ) | |
| JON DARROW | ) | |
| a/k/a DENNY, | ) | |
| JOHN F. BAYSE, | ) | |
| MATTHEW A. BROWN, | ) | |
| BRUCE BAXTER, | ) | |
| BRUCE LEMMON, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

After Jessica Gibson's employment with the Indiana State Personnel

Department ("ISPD") was terminated, she brought this lawsuit alleging

violations of the Family Medical Leave Act, the Americans with Disabilities Act,

42 U.S.C. § 1983, and Title VII.  Defendants—ISPD and several of its

employees—have moved for summary judgment.  Dkt. [99].  Ms. Gibson has

cross-moved for partial summary judgment on two § 1983 claims.  Dkt. [110].

For the reasons that follow, Defendants' motion for summary judgment is

**GRANTED in part and DENIED in part** and Ms. Gibson's cross-motion for

partial summary judgment is **DENIED**.

**I.**

**Facts and Background**

The parties have filed cross-motions for summary judgment, so the Court takes the motions "one at a time." *American Family Mut. Ins. v. Williams*, 832 F.3d 645, 648 (7th Cir. 2016). The Court views and recites the evidence and draws all reasonable inferences "in favor of the non-moving party." *Id.*

ISPD hired Ms. Gibson in February 2015 to be the Director of Human Resources for the Indiana Department of Correction. Dkt. 100-1 at 7 (Gibson Dep. at 57). A year later, in February 2016, Ms. Gibson told Mr. Bayse—ISPD's Deputy Director of Field Operations—that she was stressed and depressed because of challenges related to being a foster parent. *Id.* at 19–20 (Gibson Dep. at 84–85). She also told him that she didn't feel well and requested time off. *Id.* Mr. Bayse understood, but replied that it wasn't a good time for her to take time off. *Id.* Around that time, she also told Mr. Bayse that her parents had moved into her home because of her stepfather's health. *Id.* at 23 (Gibson Dep. at 88).

The next month, Ms. Gibson again told Mr. Bayse that she needed time off because she was depressed and stressed. *Id.* at 36–37 (Gibson Dep. at 101–02). He replied that it wasn't a good time, but she could have the time off in a couple weeks. *Id.* at 38–39 (Gibson Dep. at 103–04). When she told him that she couldn't keep waiting, he offered time off four to six weeks after new employees had been in their positions. *Id.*

At the end of March 2016, Mr. Bayse told Ms. Gibson that Department of Correction leadership had decided that she "wasn't DOC enough." *Id.* at 40–41 (Gibson Dep. at 105–06). She responded that she "wasn't doing well" and not long after asked him about the possibility of switching agencies. *Id.* at 43, 56 (Gibson Dep. at 108, 126).

During March and April 2016, Ms. Gibson met several times with Valerie Caldwell, an African-American employee at the Indiana Women's Prison. *Id.* at 94–95 (Gibson Dep. at 169–70); dkt. 100-3 at 2. At one of their last meetings, Ms. Gibson asked Ms. Caldwell if she thought that people at the prison thought that she carried herself "like the HNIC." *Id.* at 96, 103 (Gibson Dep. at 171, 179). Ms. Caldwell asked what "HNIC" meant, and Ms. Gibson responded "head nigger in charge." *Id.* at 102–03 (Gibson Dep. at 178–79).

Then, on April 18, 2016, Ms. Gibson told Mr. Bayse that she would be taking Family Medical Leave Act ("FMLA") time off. *Id.* at 72 (Gibson Dep. at 147). Mr. Bayse sighed and asked when it was supposed to start, and Ms. Gibson replied that it would start immediately. *Id.* While she was on leave, Mr. Bayse learned that Ms. Gibson had used the term "HNIC" in a conversation with Ms. Caldwell. Dkt. 100-3 at 2. He also heard from one of Ms. Gibson's employees that she was a difficult boss, came across as a bully, and had overly harsh expectations. *Id.* When Ms. Gibson returned from FMLA leave on May 23, 2016, ISPD terminated her employment. Dkt. 100-1 at 81–82 (Gibson Dep. at 156–57).

3

Ms. Gibson brought this lawsuit raising claims under the FMLA, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1983, Title VII, and Indiana Code Title 22.  Dkt. 47.  Defendants filed a motion for partial dismissal of the second amended complaint, dkt. 53, which the Court granted in part and denied in part, dismissing the Indiana Code Title 22 claims and some of the other claims as to some defendants, dkt. 86.  Defendants have moved for summary judgment, dkt. 99, and Ms. Gibson has filed a cross-motion for partial summary judgment, dkt. 110.

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on cross-motions for summary judgment, the Court takes the motions "one at a time," viewing and reciting the evidence and drawing all reasonable inferences "in favor of the non-moving party." *Williams*, 832 F.3d at 648.  The party opposing summary judgment "must support her factual assertions about disputed facts by using citations to point to specific particular

4

parts of the record." *Khan v. Midwestern Univ.*, 879 F.3d 838, 846 (7th Cir. 2018); *see* Fed. R. Civ. P. 56(c)(1). "Conclusory allegations, unsupported by specific facts, will not suffice." *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003).

### III.
### Analysis

Ms. Gibson's remaining claims are (1) FMLA interference and retaliation claims; (2) ADA failure-to-accommodate and disparate-treatment claims; (3) 42 U.S.C. § 1983 claims for deprivation of property, liberty, and equal protection; and (4) a Title VII sex-discrimination claim. *See* dkt. 47; dkt. 86.

### A. FMLA

Defendants argue that they are entitled to summary judgment on Ms. Gibson's interference and retaliation claims. Dkt. 101 at 12–15. They also argue that she cannot recovery monetary damages from the individual defendants. *Id.* at 11–12.

### 1. FMLA Interference

"The FMLA makes it unlawful for an employer to interfere with an employee's attempts to exercise any FMLA rights." *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006) (citing 29 U.S.C. § 2615(a)(1)). To prevail on an FMLA interference claim, the employee must show: "(1) she was eligible for the FMLA's protections, (2) her employer was covered by the FMLA, (3) she was entitled to take leave under the FMLA, (4) she provided sufficient notice of her intent to take leave, and (5) her employer denied her FMLA benefits to which

she was entitled." *Goelzer v. Sheyboygan County*, 604 F.3d 987, 993 (7th Cir. 2010).

Ms. Gibson brings her FMLA interference claim against Defendants ISPD and Bayse.  Dkt. 86 at 8.  Those defendants argue that the evidence does not support the "notice" element because Ms. Gibson merely requested vacation time, which was not enough to alert them to her need for medical leave.  Dkt. 101 at 13.  Ms. Gibson responds that she was clear that the time off was necessary and that Mr. Bayse knew that she qualified for FMLA leave.  Dkt. 111 at 13–14.

An employee gives sufficient notice by providing "enough information to tell the employer that the FMLA may apply." *Burnett*, 472 F.3d at 478–79; 29 C.F.R. § 825.303(b).  This requirement is "not onerous" and the employee "need not expressly mention the FMLA." *Burnett*, 472 F.3d at 478–79; 29 C.F.R. § 825.303(b).  Instead, "firms should be able to figure out for themselves the legal rules governing leave, once they know that a serious medical condition or family situation is ongoing." *Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1008 (7th Cir. 2001); 29 C.F.R. § 825.301(b).

Defendants ISPD and Bayse do not argue that Ms. Gibson failed to provide notice of a serious medical condition or family situation.  *See* dkt. 101 at 13.  Instead, they argue—with no supporting authority—that they are entitled to summary judgment because Ms. Gibson asked for vacation time instead of "actually requesting FMLA leave." *Id.*  But vacation time and FMLA leave are not mutually exclusive, 29 C.F.R. § 825.301(b), and specifically

requesting FMLA leave is not required, *see Burnett*, 472 F.3d at 478–79 ("The employee's notice obligation is satisfied so long as he provides information sufficient to show that he *likely* has an FMLA-qualifying condition."). A general request for time off for FMLA-qualifying reasons is enough. *See Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 826 (7th Cir. 2012).

Summary judgment is therefore denied on this claim.

### 2. FMLA Retaliation

An FLMA retaliation claim has three elements: "(1) the employee engaged in statutorily protected activity; (2) the employer took adverse action against the employee; and (3) the protected activity caused the adverse action." *Freelain v. Vill. of Oak Park*, 888 F.3d 895, 901 (7th Cir. 2018). The defendants for this claim—ISPD, Lemmon, Darrow, and Bayse, dkt. 86 at 13—argue that they are entitled to summary judgment on Ms. Gibson's FMLA retaliation claim because no reasonable jury could find causation. Dkt. 101 at 13–15. Specifically, they argue that the evidence shows that Ms. Gibson was fired for poor performance and using a racial epithet. *Id.* at 15. Ms. Gibson responds that Defendants' reasons are pretextual. Dkt. 111 at 15–20.

Mr. Bayse testified that he terminated Ms. Gibson because of negative feedback about her work performance and her use of the phrase "HNIC." Dkt. 100-3 at 2. None of Ms. Gibson's designated evidence disputes this testimony. She cites Mr. Bayse's calendar from March and April 2016, arguing that she was not counseled as would be expected if her supervisors were unhappy with her performance. Dkt. 111 at 17; dkt. 111-11. But a lack of calendar entries

7

showing counseling is too speculative to show that Ms. Gibson was meeting expectations at that time, because it does not point to her FMLA leave as the reason for her termination.  *See Langenback v. Wal-Mart Stores*, 761 F.3d 792, 800 (7th Cir. 2014) ("On summary judgment . . . circumstantial evidence must point directly to the conclusion that an employer was illegally motivated, without reliance on speculation." (quotation omitted)).  Similarly, even if Ms. Gibson is correct that complaints about her performance were inaccurate, the undisputed evidence shows that the complaints happened.  Dkt. 100-3 at 2. Employers may lawfully rely on work-performance complaints even if those complaints may be inaccurate.  *See Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 634 (7th Cir. 2009).

As for the "HNIC" comment, Ms. Gibson argues that it wasn't substantiated because she wasn't asked about it.  Dkt. 111 at 18–19.  But Ms. Gibson does not dispute that she used the term or that Mr. Bayse was told about it.  *Id.*  Mr. Bayse's reliance on what he was told does not show discrimination, even if he chose not to confirm it with Ms. Gibson.  *See Cracco*, 559 F.3d at 634.  Ms. Gibson also argues that a colleague accused of similar behavior was treated less harshly, but she cites no evidence in support as required.  Dkt. 111 at 18–19; *see McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 369 (7th Cir. 2019) (explaining that plaintiffs must offer evidence of a similarly situated comparator to survive summary judgment).

The lack of designated evidence leaves the timing of Ms. Gibson's termination in relation to her medical concerns and FMLA leave as the only

facts that could support her claim.  *See* dkt. 111 at 20.  Those facts are not enough to show pretext.  *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 221 (7th Cir. 2015) ("[S]uspicious timing alone is rarely sufficient to overcome a motion for summary judgment.").  Moreover, Mr. Bayse learned of Ms. Gibson's use of "HNIC" while she was on leave.  Dkt. 100-3 at 2.  When an employer learns of misconduct while the employee is on leave, firing the newly returned employee "cannot be sufficient evidence to establish causation."  *Cracco*, 559 F.3d at 634.

Finally, Ms. Gibson argues that she has more evidence and has provided only a "very very small sample."  Dkt. 111 at 17.  But Defendants' motion for summary judgment required Ms. Gibson to show her hand by designating evidence.  *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017) (explaining that "[s]ummary judgment is not a time to be coy" as the "parties are required to put their evidentiary cards on the table").  Ms. Gibson has not designated evidence creating a triable issue of fact, so Defendants are granted summary judgment on this claim.  *See Curtis*, 807 F.3d at 221 (explaining that summary judgment is proper when the undisputed evidence is that the adverse employment action was based on poor job performance or misconduct).

### 3.  Monetary Damages Against Individual Defendants

Defendants argue that sovereign immunity prevents Ms. Gibson from recovering monetary damages against individual defendants.  Dkt. 101 at 11–12.  Ms. Gibson responds that the damages she seeks will not necessarily be paid by the state, so sovereign immunity does not apply.  Dkt. 118 at 11–14.

9

The "general rule" is that sovereign immunity does not bar claims for monetary damages against individual defendants, because the money would come from the individual instead of from the state treasury. *Luder v. Endicott*, 253 F.3d 1020, 1022–23 (7th Cir. 2001). But claims against individuals are barred when it's "inescapable" that the "money will flow from the state treasury." *Haynes v. Ind. Univ.*, 902 F.3d 724, 732 (7th Cir. 2018) (citing *Omosegbon v. Wells*, 335 F.3d 668 (7th Cir. 2003)). In *Haynes*, for example, the money inescapably would have come from the state treasury because the claim was based on an employment contract and the individual defendants were not parties to the contract in their individual capacities. *Id.*

The same is true here because of the types of damages available for FMLA claims. While Ms. Gibson's FMLA claims are not based on an employment contract, the damages that are recoverable in an FLMA claim are "wages, salary, employment benefits, or other compensation," interest on those amounts, liquidated damages, and fees and costs. *See* 29 U.S.C. § 2617(a). In other words, damages recoverable under the FMLA are wages or are closely related to wages. *See Darst v. Interstate Brands Corp.*, 512 F.3d 903, 911 (7th Cir. 2008). And the Seventh Circuit has explained that damages like these inescapably flow from the state treasury. *See Luder*, 253 F.3d at 1024. Other types of damages that might lead to a different result—such as damages for embarrassment, emotional distress, and humiliation—are not recoverable under the FMLA. *See Arrigo v. Link,* 836 F.3d 787, 798 (7th Cir. 2016) ("FMLA damages don't include emotional distress and punitive damages . . . ."); *Heinze*

10

*v. S. Ill. Healthcare*, No. 08-672-GPM, 2010 WL 276722 at *2 (S.D. Ill. Jan. 19, 2010); *see also Reinebold v. Ind. Univ. S. Bend*, No. 3:18-CV-525-JD, 2019 WL 1897288 at *2–3 (N.D. Ind. Apr. 25, 2019).

Ms. Gibson therefore may not recover monetary damages from the individual defendants, and they are entitled to summary judgment on her FMLA claims.

**B. ADA and Rehabilitation Act.**

Claims under the ADA and Rehabilitation Act are "materially identical," so the Court considers them together. *A.H. v. Ill. High Sch. Assn.*, 881 F.3d 587, 592 (7th Cir. 2018). These acts support two types of claims: failure to accommodate and disparate treatment. *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019).

**1. Failure to Accommodate**

A failure-to-accommodate claim requires proof that (1) the plaintiff was a qualified individual with a disability, (2) the defendant was aware of the disability, and (3) the defendant failed to provide reasonable accommodation. *Id.* ISPD—the only defendant for this claim, dkt. 47 at 16–17; dkt. 86 at 16—argues that Ms. Gibson cannot show that ISPD failed to reasonably accommodate her. Dkt. 101 at 15–18. Ms. Gibson responds that she informed ISPD about her mental health and need for medical care, and that she requested time off. Dkt. 111 at 20–23.

Showing a failure to reasonably accommodate requires evidence not only that the employee attempted to engage the employer on the issue, "but also

that the [employer] was responsible for any breakdown that occurred in that process." *Ekstrand v. Sch. Dist. of Somerset*, 583 F.3d 972, 975–76 (7th Cir. 2009). Ms. Gibson alleges that ISPD failed to accommodate her disability when it was unwilling to explore or consider an accommodation. Dkt. 101 at 21–23. The designated evidence shows only that when Ms. Gibson told Mr. Bayse that she needed time off because of everything that was going on, he responded that it wasn't a good time, but maybe time off would be possible in four to six weeks. Dkt. 100-1 at 38–39 (Gibson Dep. at 103–04).

That is not enough evidence to create a triable issue of fact on whether ISPD failed to provide reasonable accommodation. In this type of claim, the Court must "isolate the cause of the breakdown [in the accommodation-seeking process] and then assign responsibility." *Ekstrand*, 583 F.3d at 976. Here, Ms. Gibson told Mr. Bayse that she "really, really need[ed] the time off," and he responded that time off may be possible in four to six weeks. Dkt. 100-1 at 38–39 (Gibson Dep. at 103–04). Ms. Gibson has not designated evidence revealing what, if anything, she said or other communicated to Mr. Bayse thereafter. So there is no evidence that could support an inference that ISPD was responsible for the breakdown in communication. *See EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005) ("[T]he employer will be liable only if it bears responsibility for the breakdown . . . .").[1] Nor does any designated evidence

---

[1] This is what differentiates Ms. Gibson's reasonable-accommodation claim from her FMLA interference claim. As explained above, her FMLA interference claim requires only that she put her employer on notice. Her reasonable-accommodation claim, by contrast, requires ongoing engagement in the accommodation-seeking process.

show that ISPD knew what accommodations Ms. Gibson's disability might require.  See *Stelter v. Wisc. Physicians Serv. Ins. Corp.*, 950 F.3d 488, 491 (7th Cir. 2020) (affirming summary judgment because the plaintiff failed to show that she had requested certain accommodations).  There is therefore no triable issue of fact on whether ISPD's offer was unreasonable considering the limited facts that Ms. Gibson had communicated.  See *Ekstrand*, 583 F.3d at 976–77; *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1136 (7th Cir. 1996) (explaining that a party can be responsible for a breakdown for failing to provide information that was only in that party's possession).

ISPD's motion for summary judgment is granted on this claim.[2]

### 2. Disparate Treatment

A disparate-treatment claim requires proof that (1) the plaintiff was disabled; (2) she was qualified to perform essential functions of her job with or without reasonable accommodation, and (3) disability was the "but for" cause of her adverse employment action.  *Scheidler*, 914 F.3d at 541.  Ms. Gibson raises this claim against ISPD, dkt. 47 at 16–17; dkt. 86 at 16, which argues that Ms. Gibson cannot establish the third element—causation, dkt. 101 at 19–21.  ISPD contends that Ms. Gibson was terminated not because of her disability, but because of issues relating to work performance, including the

---

[2] Because ISPD's designated evidence shows that it is entitled to summary judgment on this basis, the Court does not address ISPD's arguments that Ms. Gibson failed to designate evidence, did not provide notice of her disability, and did not request accommodation.

incident when she used the term "HNIC." *Id.* Ms. Gibson responds that those reasons are pretextual. Dkt. 111 at 23–27.

As with the FMLA claim, ISPD relies on Mr. Bayse's declaration that he terminated Ms. Gibson's employment based on negative feedback about her work performance and her use of the phrase "HNIC." Dkt. 100-3 at 2. Again, none of the evidence that Ms. Gibson cites creates a triable issue regarding the reason ISPD chose to terminate her employment.

Ms. Gibson first cites a letter from Mr. Bayse notifying her that she is being dismissed because she damaged ISPD's "trust and confidence in [her] ability to effectively perform [her] job." Dkt. 111-17. Second, she cites a letter from ISPD protesting an award of unemployment insurance that gives the same reasons for her termination as Mr. Bayse does in his declaration. Dkt. 111-2. Third, she cites a statement from Ms. Caldwell that explains that Ms. Caldwell was offended by Ms. Gibson's "HNIC" comment. Dkt. 111-18. Fourth, she cites a statement from Mr. Bayse that explains that Ms. Gibson was no longer trusted at least in part because of her "HNIC" comment. Dkt. 111-19.[3] Finally, she cites ISPD's letter to the EEOC saying that Ms. Gibson was terminated because of her "HNIC" comment. Dkt. 111-15.

None of this evidence is inconsistent with the declaration that ISPD relies on, and Ms. Gibson does not explain how it shows disability discrimination. *See* dkt. 111 at 25. She instead argues that it shows variances in Defendants'

---

[3] The statements from Ms. Caldwell and Mr. Bayse give no indication that they were made under oath. Dkt. 111-18; 111-19.

14

explanations for her firing.  Dkt. 111 at 25.  But contrary to Ms. Gibson's argument, the evidence connects the dots.  *See, e.g.*, dkt. 111-15 (explaining that the stated loss of trust was because of Ms. Gibson's "HNIC" comment). Moreover, "minor misstatement[s]" or "disagreement among defense witnesses"—which is the most that Ms. Gibson's evidence shows—cannot create a triable issue of fact on pretext.  *Monroe v. Ind. Dept. of Transp.*, 871 F.3d 495, 507 (7th Cir. 2017).  That's especially true here, because the cited evidence does not point to a disability as the cause of Ms. Gibson's termination.  *See Stelter*, 950 F.3d at 490 (explaining that the ADA does not shelter disabled employees from adverse employment actions taken for reasons other than disability).  Evidence of pretext is required, but Ms. Gibson has designated none.  *See id.* ("To establish pretext, [the plaintiff] needed to show through inconsistencies or contradictions . . . that the reason for the termination was not the reason proffered, but instead discriminatory."); *Monroe*, 871 F.3d at 503–04.

Defendants' motion for summary judgment is therefore granted on this claim.

### C. 42 U.S.C. § 1983

#### 1. Deprivation of Property

Ms. Gibson alleges that she was deprived of her property interest in her job without due process.  Dkt. 111 at 6.  This claim requires (1) a constitutionally protected property interest, (2) a loss of that interest amounting to a deprivation, and (3) that the deprivation occurred without due

process of law. *Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007). Ms. Gibson brings this claim against Defendants Bayse, Brown, Baxter, Darrow, and ISPD. Dkt. 47 at 17–24. They argue that Ms. Gibson had no property interest in her position because she was an at-will employee. Dkt. 101 at 9–10. Ms. Gibson contends that her February 2016 performance evaluation created an employment contract, giving her a property interest in her employment. Dkt. 111 at 7.

Whether Ms. Gibson had a property interest in her employment is a question of Indiana law. *See Moulton v. Vigo County*, 150 F.3d 801, 804 (7th Cir. 1998). Under Indiana law, an at-will employee has no property interest in ongoing employment. *Id.* (citing *Phegley v. Ind. Dept. of Highways*, 564 N.E.2d 291, 295 (Ind. App. 1990)). "The presumption of at-will employment is strong" and the Indiana Supreme Court "has recognized only three exceptions" to the at-will employment doctrine. *Baker v. Tremco Inc.*, 917 N.E.2d 650, 653–54 (Ind. 2009). They are (1) if "adequate independent consideration" supports an employment contract, (2) "if a clear statutory expression of a right or a duty is contravened," and (3) if promissory estoppel applies. *Id.*

Ms. Gibson relies on the first exception, arguing that a performance evaluation created an employment contract. Dkt. 111 at 6–7; dkt. 118 at 8. In the evaluation, Mr. Bayse said: "I look forward to seeing what [Ms. Gibson] can accomplish in her second year."[4] Dkt. 111-1 at 4. But the adequate

---

[4] Ms. Gibson does not argue that the evaluation created a unilateral contract and it does not contain the requisite "clear promise of secure employment." *Harris v. Brewer*, 49 N.E.3d 632, 642 (Ind. Ct. App. 2015).

independent consideration exception requires a "substantial detriment" that was given "in exchange for a promise" of continued employment.  *Harris v. Brewer*, 49 N.E.3d 632, 643–44 (Ind. Ct. App. 2015).  Ms. Gibson alleges that she withdrew from another opportunity and spent more money than she otherwise would have.  Dkt. 118 at 8–9.  But that is not enough to support adequate independent consideration because Ms. Gibson has designated no evidence showing that those detriments were offered "in exchange for a promise of permanent employment."  *Harris*, 49 N.E.3d at 643–44 (explaining that adequate independent consideration requires an "independent benefit bestowed upon the employer").

Defendants are therefore entitled to summary judgment on Ms. Gibson's deprivation of property without due process claim.[5]

### 2. Deprivation of Liberty and Equal Protection

Ms. Gibson cross-moves for summary judgment on two other § 1983 claims—that her equal-protection rights were violated and that she was deprived of her liberty.  Dkt. 118 at 5.  These claims are against Defendants Darrow, Bayse, Baxter, and Brown, dkt. 47 at 17, who argue that these claims were insufficiently pleaded in the complaint and that Ms. Gibson's cross-motion for summary judgment should be denied because she has designated no evidence in support, dkt. 114 at 4–5.

---

[5] Because Ms. Gibson had no property interest in her employment, the Court does not address Defendants' argument that it provided due process.

The deprivation-of-liberty claim relies on an occupational-liberty interest. *See* dkt. 118 at 6. "An occupational-liberty claim may arise when, after an adverse employment action, a public employer stigmatizes the employee by making public comments impugning his good name, honor, or reputation or imposes a stigma that forecloses other employment opportunities." *Palka v. Shelton*, 623 F.3d 447, 454 (7th Cir. 2010). For the public-disclosure element of the claim, Ms. Gibson pleaded only that several state employees told her, in connection with her unemployment claim, that she had been racist toward a subordinate. Dkt. 47 at 11–13.

However, the "public-disclosure requirement requires that the defendant actually disseminate the stigmatizing comments in a way that would reach potential future employers." *Palka,* 623 F.3d at 454. Internal dissemination is not enough, *id.* (citing *Ratliff v. City of Milwaukee,* 795 F.2d 612, 627 (7th Cir. 1986)), and Ms. Gibson has not pleaded or designated evidence showing more than that. The Court therefore gives notice under Federal Rule of Civil Procedure 56(f) of its intent to enter summary judgment for Defendants on this claim.

For the equal-protection claim, Ms. Gibson alleges that she was treated differently than a non-disabled coworker. *See* dkt. 47 at 21–22. This claim requires Ms. Gibson to show discriminatory intent. *See Harper v. Fulton County,* 748 F.3d 761, 765 (7th Cir. 2014). Ms. Gibson does not allege or provide direct evidence of discriminatory intent, so the Court analyzes her claim under the *McDonnell Douglas* burden-shifting approach. *See id.* at 767.

18

That requires her to show that (1) she is disabled, (2) that she suffered an adverse employment action, (3) she was meeting her employer's legitimate business expectations, and (4) a similarly situated non-disabled employee was treated more favorably.  *Id.*

But as explained above for Ms. Gibson's ADA claim, Defendants have designated evidence that Ms. Gibson's employment was terminated because of work performance and her use of "HNIC"—not because of a disability.  Ms. Gibson has designated no evidence in response, such as evidence of a similarly situated non-disabled employee who was treated more favorably.  *See* dkt. 118 at 7–8.

Ms. Gibson's cross-motion for summary judgment on this claim is therefore denied.  Because Defendants have designated evidence of a non-discriminatory reason for Ms. Gibson's termination and she has not provided evidence creating a triable issue of fact, the Court gives notice under Federal Rule of Civil Procedure 56(f) of its intent to enter summary judgment for Defendants on this claim.

Ms. Gibson shall have through May 22, 2020 to respond why summary judgment should not be granted on her equal-protection and deprivation-of-liberty claims.

### D. Title VII

Ms. Gibson's Title VII claims against ISPD, dkt. 86 at 16, allege that she was terminated on the basis of her sex and that she was subjected to a hostile work environment, dkt. 47 at 24–25.

### 1. Termination on the Basis of Sex

Title VII prohibits employers from terminating employees on the basis of sex. *See Ripberger v. Corizon, Inc.*, 773 F.3d 871, 877 (7th Cir. 2014) (citing 42 U.S.C. § 2000e-2(a)(1)). ISPD argues that it is entitled to summary judgment because it terminated Ms. Gibson because of work performance and her use of "HNIC." Dkt. 101 at 22. Ms. Gibson responds that those reasons are pretextual. Dkt. 111 at 28.

ISPD has designated Mr. Bayse's declaration that Ms. Gibson's employment was terminated because of her work performance and her use of the phrase "HNIC." Dkt. 100-3 at 2. Therefore, to avoid summary judgment, Ms. Gibson must present evidence allowing a rational jury to conclude that she was terminated on the basis of her sex. *Ripberger*, 773 F.3d at 877. However, she has designated none. *See* dkt. 111 at 27–30; dkt. 118 at 18–19. And ISPD's designated evidence that Mr. Bayse once called Ms. Gibson a "strong woman," dkt. 101 at 8 (citing dkt. 100-1 at 49 (Gibson Dep. at 114)), is not enough to create a triable issue of fact. *See Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 694 (7th Cir. 2006) ("[I]solated comments that are no more than 'stray remarks' in the workplace are insufficient to establish that a particular decision was motivated by discriminatory animus.").

ISPD is therefore entitled to summary judgment on this claim.

### 2. Hostile Work Environment

Sexual harassment that is severe or pervasive enough to affect the terms and conditions of employment is actionable under Title VII.

20

*Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 78 (1998); *Swyear v. Fare Foods Corp.,* 911 F.3d 874, 881 (7th Cir. 2018). Proving this claim requires a plaintiff to show that "(1) the plaintiff's workplace was both subjectively and objectively offensive; (2) the plaintiff's sex was the cause of the harassment; (3) the harassment was severe or pervasive; and (4) there is a basis for employer liability." *Milligan-Grimstad v. Stanley,* 877 F.3d 705, 713 (7th Cir. 2017).

ISPD argues that the alleged actions and comments were not severe enough for a reasonable person to find that her work environment was hostile. Dkt. 101 at 24. Ms. Gibson responds that under the totality of the circumstances, she has established a hostile work environment. Dkt. 111 at 32–33. In order to meet the severity element of a hostile-work-environment claim, a workplace must be "so pervaded by discrimination that the terms and conditions of employment were altered." *Vance v. Ball State Univ.,* 570 U.S. 421, 427 (2013). The behavior need not make the workplace "hellish." *Jackson v. Cty. of Racine,* 474 F.3d 493, 500 (7th Cir. 2007). But it must be more than offhand comments and isolated incidents. *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998).

The evidence designated by Ms. Gibson in support of this claim is that Mr. Bayse called Ms. Gibson a "strong woman," called a male employee a woman and said he acts like a woman, and called another female employee a "bitch"; and that Mr. Darrow hugged Ms. Gibson three times. Dkt. 100-1 at

49, 110 (Gibson Dep. at 114, 206).[6]  That is not enough to create a triable issue of fact in a hostile-work-environment claim.  As the Seventh Circuit has explained, conduct must be "severe or pervasive" to create a hostile work environment.  *Passananti v. Cook County*, 689 F.3d 655, 667 (7th Cir. 2012). The comments and hugs here do not rise to that level.  Physical contact such as a "hand on the shoulder, a brief hug, or a peck on the cheek" are "unlikely to create a hostile environment in the absence of aggravating circumstances such as continued contact after an objection."  *Patton v. Keystone RV Co.*, 455 F.3d 812, 816 (7th Cir. 2006).  The designated evidence here does not show aggravating circumstances.  And Mr. Bayse's comment that Ms. Gibson was a "strong woman" does not rise even to the level of "occasional vulgar banter," which is not enough to create a hostile work environment.  *Id.*  Finally, another employee being called a "bitch" is offensive and unacceptable.  However, a single comment directed at another employee also cannot create a hostile work environment.  *See Mercer v. Cook County*, 527 Fed. App'x 515, 521 (7th Cir. 2013); *Overly v. KeyBank Nat. Assn.*, 662 F.3d 856, 863 (7th Cir. 2011); *cf. Passananti*, 689 F.3d at 669 (plaintiff being called a "bitch" to her face "nearly constantly for several years" along with other harassing comments could create a hostile work environment).

ISPD is thus entitled to summary judgment on this claim.

---

[6] Ms. Gibson makes additional allegations in her reply brief, but they are unsupported by designated evidence.  Dkt. 118 at 19–20.

*        *        *

Ms. Gibson also suggests in her briefs that her actions did not warrant her termination. *See, e.g.*, dkt. 111 at 2, 24–25. But it is not the Court's role to assess the wisdom or fairness of ISPD's personnel decisions. *Ballance v. City of Springfield*, 424 F.3d 614, 621 (7th Cir. 2005) (explaining that the court does not "sit as a super-personnel department"). Unless there is a triable issue of fact about whether Ms. Gibson was terminated for impermissible reasons, Defendants are entitled to summary judgment. *See id.* Here, as explained above, no reasonable jury could conclude from the designated evidence that Ms. Gibson was terminated for impermissible reasons, and the Court's inquiry ends there.

## IV.
## Conclusion

Defendants' motion for summary judgment is **GRANTED in part and DENIED in part**. Dkt. [99]. Ms. Gibson's cross-motion for partial summary judgment is **DENIED**. Dkt. [110]. The only remaining claims are (1) an FMLA interference claim against ISPD, and (2) deprivation-of-liberty and equal-protection claims via section 1983 against Defendants Darrow, Bayse, Baxter, and Brown. Ms. Gibson **SHALL HAVE** through **May 22, 2020** to respond why the Court should not enter summary judgment for Defendants on her deprivation-of-liberty and equal-protection claims. *See* Fed. R. Civ. P. 56(f). Defendant Lemmon is **DISMISSED**; the clerk **shall update** the docket accordingly.

**SO ORDERED.**

Date: 4/21/2020

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

JESSICA A. GIBSON
3442 Hillside Ave
Gulf Breeze, FL 32563

David C. Dickmeyer
INDIANA ATTORNEY GENERAL
David.Dickmeyer@atg.in.gov